IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNIE L. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-0750 |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

ARTHUR J. SCHWAB, District Judge

**I. Introduction**

Plaintiff, Connie L. Jones ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties have submitted cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the record developed at the administrative proceedings.[1] For the following reasons, Plaintiff's Motion for Summary Judgment (ECF No. 8) will be DENIED. The Commissioner's Motion for Summary Judgment (ECF No. 11) will be GRANTED and the administrative decision of the Commissioner will be AFFIRMED.

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F. Supp. 1322, 1330 (W.D.Ark. 1987).

**II. Procedural History**

Plaintiff protectively applied for DIB and SSI on June 2, 2011 alleging disability beginning April 29, 2011 due to a back injury/problems and asthma. (R. at 123-137, 165).[2] The claims were initially denied on August 30, 2011. (R. at 54-73). On September 27, 2011, Plaintiff filed a written request for a hearing (R. at 84-85), and an administrative hearing was held on January 10, 2013 in Morgantown, West Virginia before Administrative Law Judge ("ALJ") Terrence Hugar. (R. at 27-53). Plaintiff, who was represented by counsel, appeared and testified. (R. at 29-48). Timothy Mahler, an impartial vocational expert ("VE"), also testified. (R. at 48-53). In a decision dated February 7, 2013, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (R. at 14-23). The Appeals Council denied Plaintiff's request for review on April 22, 2014 (R. at 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner in this case.

Plaintiff commenced the present action on June 12, 2014 seeking judicial review of the Commissioner's decision. (ECF No. 1). Plaintiff filed a Motion for Summary Judgment on September 22, 2014. (ECF No. 8). Defendant filed a Motion for Summary Judgment on October 22, 2014. (ECF No. 11). These motions are the subject of this Memorandum Opinion.

**III. Statement of the Case**

**A. The ALJ's decision**

In his decision denying benefits to Plaintiff, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity at any time during the period at issue, *i.e.*, since April 29, 2011 (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). (R. at 17).

---

[2] References to the administrative record (ECF No. 6), will be designated by the citation "(R. at __)".

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; arthritis; history of asthma/chronic lung disease; and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)). (R. at 17).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. at 17).

4. Throughout the period at issue, the ALJ found that the claimant has had at least the residual functional capacity to perform a range of work activity that requires no more than a "sedentary" level of physical exertion,[3] except she must be afforded a sit/stand option allowing a 1- to 2-minute change of position every 30 minutes; requiring no crawling, climbing of ladders, ropes or scaffolds, and no more than occasional performance of other postural movements (*i.e.*, balancing, climbing ramps or stairs, crouching, kneeling and stooping); and entailing no concentrated exposure to temperature extremes, wetness, humidity or respiratory irritants (*e.g.*, chemicals, dust fumes, gases, noxious odors, poor ventilation, or smoke) (20 CFR §§ 404.1529(e), 404.1567(a), 416.920(e) and 416.967(a)). (R. at 18).

---

[3] The Social Security regulations define sedentary work as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

5. The claimant remained capable of performing "vocationally relevant" past jobs as a customer service technician and tax preparer, either as previously performed by her or as such jobs are generally performed within the national economy (20 C.F.R. §§ 404.1565 and 416.965). (R. at 22-23).

6. The claimant has not been under a disability, as defined in the Social Security Act, at any time during the period at issue, *i.e.*, since April 29, 2011 (20 CFR §§ 404.1520(f) and 416.920(f)). (R. at 23).

**B. Medical evidence[4]**

A review of the medical evidence that predates Plaintiff's alleged disability onset date of April 29, 2011 reveals that she was treated for cervical and lumbar spine injuries after falling on ice in February 2003 and subsequently underwent chiropractic treatment and physical therapy. (R. at 207). On May 25, 2006, she was evaluated by Cameron B. Huckell, M.D., for ongoing complaints of neck and back pain. (R. at 211). Plaintiff reported that following the accident, she missed 12 hours of work and was later laid off from work in September 2003. (R. at 211). On physical examination, Plaintiff walked with a normal gait and was able to walk on her heels and toes showing good balance and coordination. (R. at 213). She exhibited a decreased range of motion of her cervical and lumbar spine (80% of full), and had intact sensation, reflexes, and motor strength of her upper and lower extremities, and her straight leg raise testing was negative. (R. at 213). Dr. Huckell reported that her cervical and lumbar spine MRI's showed disc herniations at C4-C5 and C5-C6, and she had annular tears at L4-L5 and L5-S1 with

---

[4] Plaintiff cites to evidence submitted to the Appeals Council in further support of her claim (R. at 465). (ECF No. 10 at p. 6). This evidence, however, was not considered by the ALJ and pursuant to *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001), the Court cannot consider this evidence in its review of the ALJ's decision. Additionally, Plaintiff failed to make the required showing under *Szuback v. Sec'y of Health and Human Serv.*, 745 F.2d 831 (3d Cir. 1984), for remand to reconsider the case in light of this newly submitted evidence. Accordingly this evidence will not be discussed.

hypertrophic facets. (R. at 213). A cervical spine x-ray dated May 25, 2006 revealed spondylosis with foraminal stenosis at C5-C6. (R. at 213-214). Dr. Huckell was of the view that Plaintiff had suffered significant injury to her cervical and lumbar spine as a result of her fall in February 2003. (R. at 214). He diagnosed her with herniated disc of the cervical and lumbar spines without myelopathy. (R. at 214). He recommended conservative chiropractic care. (R. at 214). Dr. Huckell opined that Plaintiff was "partially moderately disabled" and should avoid lifting greater than 35 pounds; repetitive turning, twisting, reaching, climbing and balancing; sitting, standing, or walking greater than two hours at one time; and working longer than an eight-hour day. (R. at 214).

Chest x-rays dated October 25, 2006 showed no active cardiopulmonary disease. (R. at 216). Lumbar spine x-rays dated January 5, 2008 were unremarkable. (R. at 220). An MRI of Plaintiff's lumbar spine dated January 9, 2008 showed a small left paracentral disc bulge at L5-S1, a small to moderate amount of bilateral foraminal narrowing at L4/5 due to a broad based disc bulge, and mild right foraminal stenosis at L2/3 due to a broad based disc bulge. (R. at 221). On May 8, 2008, Plaintiff's musculoskeletal physical examination revealed she had a full active range of motion with 5/5 strength in her upper and lower extremities and she was neurologically intact. (R. at 229).

In September 2010, John Nowak, D.C., completed a Doctor's Progress Report for the State of New York Workers' Compensation Board, and indicated that Plaintiff had cervical herniation/protrusion of disc, cervical strain, and lumbar protrusion, rupture or herniation, cervical protrusion or bulge. (R. at 250-251). Dr. Nowak reported that Plaintiff was working and had no work restrictions. (R. at 251).

Plaintiff began undergoing chiropractic treatment with Ewing M. Miller, D.C. on October 29, 2010. (R. at 252). Plaintiff's cervical and lumbar ranges of motion were decreased and painful, but Dr. Miller stated that her prognosis was "good." (R. at 252-253). At her January 2011 and March 2011 visits, Dr. Ewing found Plaintiff had decreased range of motion and palpable pain of her cervical and lumbar spine, negative straight leg raise testing, and normal reflexes. (R. at 262-263, 269-270). Dr. Miller reported that Plaintiff's prognosis was "good." (R. at 263, 269). Plaintiff was also seen by Mark Franz, D.O. on February 16, 2011 for concerns about her weight, but had no other complaints. (R. at 244).

On March 31, 2011, Dr. Miller completed a Doctor's Progress Report for the State of New York Workers' Compensation Board, and indicated that Plaintiff missed work because of the injury, and was working and performing usual work activities. (R. at 275). May 2011 x-rays of Plaintiff's lumbar spine revealed degenerative changes without acute fracture or dislocation. (R. at 282, 315). Plaintiff continued undergoing chiropractic treatment with Dr. Miller throughout 2011. (R. at 346-370).

The medical evidence subsequent to Plaintiff's alleged disability onset date reveals that when seen by Dr. Franz on June 2, 2011, Plaintiff reported that her diet was healthy and she engaged in some exercise, but "didn't do as much as [she] should." (R. at 247). Plaintiff complained of low back pain and neck pain with numbness and tingling in the palm of her hand at times, for which she was treated by Dr. Miller three times a week. (R. at 247). Dr. Franz noted that Plaintiff's asthma was stable. (R. at 247).

Plaintiff underwent a consultative physical examination performed by Victor Jabbour, M.D. on August 22, 2011. (R. at 290-306). Plaintiff reported that she last worked in telemarketing for six months until she was laid off in April 2011. (R. at 301). Plaintiff

6

complained of headaches and neck pain for the last 31 years, shortness of breath and asthma for the past 40 years for which she used an inhaler, back pain for the last 10 years, and lifelong obesity. (R. at 302). Dr. Jabbour performed pulmonary function testing, which showed severe restrictive ventilator defect due to severely reduced forced vital capacity and possibly a superimposed early obstructive pulmonary impairment due to disproportionately reduced forced expiratory flow during the middle half of exhalation. (R. at 291-296). Significant improvement was noted however, with the administration of bronchodilator therapy, with Dr. Jabbour noting that she did "very good." (R. at 291-296, 304). On physical examination, Plaintiff's lungs were clear to auscultation and percussion, with no rhonci, rales or wheezing found. (R. at 304). Dr. Jabbour reported that Plaintiff's upper and lower extremity examinations were normal except she was unable to squat, she was able to walk on her heels and toes, and get on and off the examination table and chair without difficulty. (R. at 304). Her neck was supple, and she exhibited a normal range of motion of the lumbar spine, although some mild tenderness was noted over the lumbosacral area. (R. at 304-305). Plaintiff's sensation was intact, her gait, muscle strength and neurological status were all normal, and her straight leg raise testing was negative. (R. at 304-305).

Dr. Jabbour diagnosed Plaintiff with headache "maybe" secondary to migraine and neck muscle spasm; neck pain secondary to arthritis and possible disk disease; shortness of breath secondary to chronic lung disease, lack of exercise and obesity; back pain secondary to arthritis and possible disk disease; and obesity. (R. at 305). Dr. Jabbour assessed Plaintiff's ability to perform work-related physical activities, opining that she could frequently lift and carry two to three pounds frequently and ten pounds occasionally; stand and walk one hour or less in an eight-hour workday; sit less than six hours; occasionally bend, kneel, stoop, crouch, balance, and

7

climb; and should avoid exposure to poor ventilation, heights, moving machinery, vibration, temperature extremes, dust, fumes, odors, gases and humidity. (R. at 297-298).

On August 30, 2011, Nghia Van Tran, M.D., a state agency reviewing physician, reviewed the medical evidence of record and concluded that Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally; stand and/or walk for three hours; sit for a total of about six hours in an eight-hour workday; had no postural limitations; and needed to avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (R. at 59-60, 70-71).

An MRI of Plaintiff's lumbar spine dated September 21, 2011 revealed disc bulges at levels L4-L5 and L5-S1 with small foci of T2 hyperintensity posteriorly suggestive of annular tears; mild spondylotic changes with lower lumbar facet arthrosis; and varying degrees of central stenosis and foraminal encroachment with moderate to severe left L5-S1 foraminal encroachment (R. at 316-317).

Plaintiff's treatment records showed that she continued chiropractic treatment with Dr. Miller from January 2012 through December 2012. (R. at 322-345, 391-411).

On January 20, 2012, Plaintiff was seen by Theresa Lacava, M.D., as a new patient. (R. at 442). Plaintiff reported no headaches, no cough and normal enjoyment of activities. (R. at 442). She indicated that she was undergoing chiropractic treatment with Dr. Miller. (R. at 442). Dr. Lacava reported that Plaintiff was well-appearing and did not appear uncomfortable, her neck and musculoskeletal examinations were normal, and her lungs revealed normal breath sounds. (R. at 443). Plaintiff reported that she used an Albuterol inhaler. (R. at 444). Plaintiff reported she was self-reliant in her usual daily activities, and had no difficulty feeding herself, dressing herself, or walking unassisted. (R. at 444). Dr. Lacava assessed Plaintiff with diastolic

8

hypertension, intermittent asthma, hyperlipidemia, exogenous obesity, osteoarthritis, and bulging lumbar disc, and prescribed Zocor for her hyperlipidemia. (R. at 444-445).

When seen by Dr. Lacava on April 20, 2012, Plaintiff complained of increased wheezing. (R. at 437). Plaintiff indicated that she used the Albuterol inhaler four to five times a day while at home and more when she cleaned her aunt's house. (R. at 437). Dr. Lacava added prednisone to her medication regimen. (R. at 438).

Plaintiff was evaluated on May 28, 2012 by Michelle Stepp, D.C., in connection with a workers' compensation claim related to her fall in February 2003. (R. at 384-387). Plaintiff reported that she received chiropractic treatment with Dr. Miller, took no medications on a daily basis, and only took Ibuprofen for severe pain. (R. at 385). On physical examination, Dr. Stepp reported that Plaintiff got on and off the examination table with mild difficulty, had lumbar spine ranges of motion of 17/60 flexion, 16/25 extension, 17/25 right lateral flexion, and 18/25 left lateral flexion and had negative straight leg raise testing on the left and positive testing on the right. (R. at 385-386). Plaintiff had cervical spine ranges of motion of 9/50 flexion, 19/60 extension, 11/45 right lateral flexion, 18/45 left lateral flexion, 16/80 right rotation, and 20/80 left rotation. (R. at 386). Dr. Stepp found that her prognosis was guarded and that she would continue to benefit from chiropractic treatment. (R. at 387).

Plaintiff returned to Dr. Lacava on June 1, 2012 and reported an improvement in her asthma symptoms. (R. at 429). Plaintiff indicated that she was using her medications on a less frequent basis and some days "not at all." (R. at 429). She had no night cough and was able to do housework without shortness of breath. (R. at 429). Plaintiff's physical examination was essentially normal with some right trapezius muscle tenderness on palpation. (R. at 429-430).

9

An MRI of Plaintiff's cervical spine dated June 6, 2012 revealed spondylitic changes and narrowing of the central canal and neural foramina at C5-6 due to posterior disk herniation and abnormal signal within the anterior-inferior endplate of the T2. (R. at 318-319).

On August 31, 2012, Plaintiff reported to Dr. Lacava that she used Ventolin as needed. (R. at 423). Plaintiff complained of shoulder problems, but reported normal enjoyment of activities. (R. at 423). Plaintiff's lung examination was normal and her musculoskeletal examination was normal overall, except for some tenderness of the right trapezius muscles on palpation. (R. at 424). Dr. Lacava reported that Plaintiff was self-reliant with her usual daily activities and had no difficulty feeding or dressing herself. (R. at 424).

On December 28, 2012, Dr. Miller completed a form entitled "Lumbar Spine Residual Functional Capacity Questionnaire." (R. at 454-458). Dr. Miller opined that Plaintiff could sit for fifteen to twenty minutes at one time and for less than two hours total in an eight-hour workday; stand and/or walk for fifteen to twenty minutes and for less than two hours in an eight-hour workday; must walk for five minutes every thirty minutes; required a job that allowed "at will" shifting of positions; required unscheduled five to ten-mintue work breaks every fifteen minutes; should elevate her legs four hours in an eight-hour workday; did not require a hand held assistive device, could rarely lift and carry ten pounds or less; could rarely twist, stoop, or crouch/squat; and could never climb ladders or stairs. (R. at 455-457). He indicated that Plaintiff frequently experienced pain due to her impairments that interfered with her attention and concentration needed to perform even simple work tasks, and would miss more than four days per month due to her impairments. (R. at 455, 457). He concluded that Plaintiff had been unable to work since April 2011. (R. at 457).

## C. Hearing testimony

Plaintiff testified that she had a bachelor's degree in business administration and last worked as a customer service representative from November 2010 through April 2011. (R. at 32-33). Plaintiff claimed that she stopped working in April 2011 due to pain. (R. at 36). Prior to that position Plaintiff worked in production as a finisher/inspector. (R. at 34). Plaintiff also worked as a flex base operator until she was laid off in 2003. (R. at 35). At the time of the hearing, Plaintiff stated that she had recently finished a six-week tax course and was scheduled to start working 32 hours per week at Jackson Hewitt for the tax season. (R. at 43-44).

Plaintiff stated that she suffered from low back pain that radiated down her right leg for which she treated with a chiropractor, but had not undergone injection therapy. (R. at 36-37). Plaintiff testified that she was able to sit, stand and/or walk for twenty to thirty minutes before needing to change positions, and was able to lift ten pounds. (R. at 37, 40). She stated that she sometimes would lie down to alleviate the pain during the day. (R. at 37-38). Plaintiff claimed that she was limited in her daily activities and that her pain varied between eight and ten, with ten being severe. (R. at 38). She stated that she did not take pain medications because she was unable to function when taking them. (R. at 47). Plaintiff indicated that her chiropractor precluded her from working for one month due to pain, but that several back surgeons recommended that she "hold off" on back surgery. (R. at 38, 40). Plaintiff stated she could not afford back surgery since she did not have insurance. (R. at 46). She was ineligible for a medical access card however, because she had collected unemployment compensation and made too much money. (R. at 47). Plaintiff testified that she also suffered from asthma but used an inhaler to control her symptoms. (R. at 41).

The VE was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform sedentary work but needed a sit/stand option with the ability to change positions every one to two minutes every thirty minutes without going off task; with occasional postural maneuvers except no crawling or climbing of ladders, ropes, or scaffolds; with no concentrated exposure to extreme heat, extreme cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (R. at 50-51). The VE testified that such hypothetical individual could perform the customer service job as normally performed, and the tax preparer job as normally performed and as performed by the hypothetical individual. (R. at 50-51).

**IV. Standard of Review**

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2) (A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions, he or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability

> unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-5, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

14

**V. Discussion**

Plaintiff's sole contention is that the ALJ committed reversible error by evaluating her disability claim from the "wrong alleged onset date." (ECF No. 10 at p. 3). Plaintiff alleged April 29, 2011 as her onset date and argues, in essence, that the ALJ impermissibly relied upon medical and other evidence that predated this date in ultimately finding her not disabled. In Plaintiff's view, any evidence prior to this date is simply "irrelevant" to her claim. (ECF No. 10 at pp. 4-5) ("[T]he ALJ's opinion fails to adhere to the substantial evidence requirement because it is based primarily on irrelevant evidence predating Ms. Jones' alleged onset date." … "It is equally obvious that none of [the repeatedly cited evidence] was relevant to Ms. Jones' allegations of disability after April 29, 2011.").

The Court has thoroughly reviewed the administrative record in this case and finds no merit to the Plaintiff's argument for several reasons. First, the Court observes that the ALJ repeatedly recognized throughout his decision that Plaintiff's alleged onset date of disability was April 29, 2011. (R. at 14, 17-18, 23). "Onset date of disability" is "the first day an individual is disabled as defined in the Act and the regulations." Social Security Ruling ("SSR") 83-20, 1983 WL 31249 at *1. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … *has lasted* or *can be expected to last* for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Given this definition, an ALJ may properly consider a claimant's earlier records. *Davinci v. Astrue*, 2012 WL 6136846 at *2 (M.D.Pa. 2012) (rejecting plaintiff's argument that the ALJ cannot rely on earlier reports to contradict later reports when treating a degenerative or progressive condition since the definition of disabled requires the fact

15

finder to consider whether the claimant's impairment has lasted for a year, or can be expected to last that long).

Moreover, the Commissioner's regulations specifically require the Commissioner to develop and consider a claimant's complete medical history for at least the twelve months preceding the month in which the claimant files his or her application for benefits. *See* 20 C.F.R. §§ 404.1512(d), 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application … ."). It would be senseless to require the Commissioner to develop the record in this manner, only to preclude the ALJ from considering it. Accordingly, the Court is of the view that the ALJ is not prohibited from considering the medical evidence predating Plaintiff's alleged disability onset date, and "there is nothing in the regulations which states that the ALJ cannot go farther[.]" *Shamonsky v. Comm'r of Soc. Sec.*, 2011 WL 3101800 at *7 (W.D.Pa. 2011).

The Court further finds that the ALJ's consideration of this evidence was appropriate in the context of the ALJ's credibility calculus. In determining the credibility of an individual's subjective complaints of pain and other symptoms, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements ..., statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186 at *1. If the ALJ determines that the credibility of the claimant's testimony should be discounted, the ALJ must provide reasons for discounting that testimony. *See Akers v. Callahan*, 997 F. Supp. 648, 658 (W.D.Pa. 1998).

16

In the instant case, the ALJ found that Plaintiff's testimony concerning her alleged limitations was "not entirely credible" because it conflicted with her prior work history, the medical evidence of record, and Plaintiff's own statements to treating and examining physicians. (R. at 18-21). The ALJ observed that Plaintiff's work history since 2003 had been sporadic, and that her absence from the workforce from 2004 through 2006 was due to her status as a full-time student and not due to the injuries sustained in 2003. (R. at 18-20). The ALJ noted that Plaintiff collected unemployment compensation insurance in 2010 and after she was laid off in 2011, and eligibility for such benefits was premised on an individual's availability to accept employment. (R. at 20). The ALJ found Plaintiff's receipt of unemployment compensation benefits inconsistent with her application for disability benefits alleging total disability. (R. at 20). *See, e.g., Myers v. Barnhart*, 57 F. App'x 990, 997 (3d Cir. 2003) (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (holding that application for unemployment compensation benefits can adversely affect a claimant's credibility because of admission of ability to work required for unemployment benefits)).

With respect to the objective findings, the ALJ observed that Plaintiff's later diagnostic studies appeared relatively consistent with her earlier studies. (R. at 19). Plaintiff appears to take issue with the ALJ's characterization in this regard. (ECF No. 10 at p. 5). Notwithstanding the ALJ's characterization, it is clear that he considered all of the findings contained in the diagnostic studies, both pre- and post-dating Plaintiff's onset date, and in conjunction with other relevant evidence, rejected Plaintiff's claimed limitations. (R. at 19-22).[5]

---

[5] Although not specifically articulated as such, to the extent Plaintiff argues that she is disabled due to asthma based upon post-onset pulmonary function testing, the Court rejects Plaintiff's argument. The mere diagnosis of an impairment is insufficient to establish eligibility for benefits. *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004). "Rather, a claimant must show that the impairment resulted in disabling limitations." *Id.* (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 2004)). Here, Plaintiff has failed to present any evidence that her asthma significantly caused any further limitations other than those accounted for by the ALJ in his RFC assessment. (R. at 18).

17

The ALJ further noted that Plaintiff complained of pain, but refused to take any pain medication either before or after her alleged onset date, and reported to Dr. Lacava in August 2012 that she was completely self-reliant in her daily activities. (R. at 19-21). Finally, the ALJ noted that Plaintiff testified at the hearing that she had just taken a course of study in tax preparation and was scheduled to work thirty hours a week during the upcoming tax season. (R. at 21). The ALJ complied with his obligations under the regulations to review "the entire case record" submitted by the Plaintiff in assessing her credibility and his findings in this regard are supported by substantial evidence.

In support of a remand, Plaintiff cites to *Padgett v. Colvin*, 2014 WL 4269503 at *14-16 (M.D.Pa. 2014), wherein a remand was ordered because the ALJ used an incorrect disability onset date in concluding that the claimant was not disabled. The district court found such error was not harmless because the ALJ relied heavily on the opinion of an examining physician and state agency medical consultant which were rendered before the Plaintiff's actual alleged onset date. *Id.* Here, however, the ALJ utilized the correct disability onset date in his analysis, and did not rely on opinions rendered prior to that date in concluding that Plaintiff was not disabled. Rather, the ALJ thoroughly examined the Plaintiff's medical records post-dating her disability onset date and discussed the various findings contained therein, considered her course of treatment, and considered her testimony. (R. at 19-22). The ALJ also considered the assessments of Dr. Jabbour, Dr. Tran and Dr. Miller, all of whom had varying opinions with respect to the Plaintiff's functional limitations and were rendered after Plaintiff's disability onset date. (R. at 21-22). The ALJ concluded that Dr. Jabbour and Dr. Miller's assessments were not supported or were contradicted by the record (R. at 22-22), and adopted the nonexetional limitations assessed by Dr. Tran, but limited Plaintiff to only sedentary exertional work activity.

(R. at 22). The ALJ's reliance on Dr. Tran's opinion was appropriate in this regard. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) ("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]"). The Court thus finds *Padgett* factually inapposite.

## VI. Conclusion

Based upon the foregoing, the Court finds that substantial evidence supports the decision of the ALJ finding Plaintiff not disabled under the Act. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 8) will be denied; Defendant's Motion for Summary Judgment (ECF No. 11) will be granted; and the decision of the ALJ will be affirmed.

An appropriate Order follows.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc: All Registered ECF Counsel and Parties